UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
|    Plaintiff. | ) |
| | ) Case No: 1:19-cv-02204-JMS-DML |
| | ) |
| VS. | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| BOARD OF TRUSTEES, | ) |
| | ) |
|    Defendant. | ) |

**FIRST AMENDED COMPLAINT**

PLAINTIFF, John Doe, by and through his attorneys, HOCKER & ASOCIATES, LLC, by Brett E. Osborne, complains against Defendant, Indiana University Board of Trustees, (IU), as follows:

**THE NATURE OF THIS ACTION and RELEVANT FACTS**

1. This case arises out of the actions taken and procedures employed by IU, concerning allegations made against Plaintiff, a male senior student at IU, (designated herein as "John Doe" who is well known to the Defendant and is proceeding under said pseudonym with and by agreement of the Defendant), as a result of the alleged sexual misconduct with fellow IU female student, "Jane Doe" (who is well known to and by the

Defendant, and will not be named to protect her privacy until and/or unless it is demanded by the Defendant, Ordered by the Court or becomes necessary in the prosecution of this case).

2. The sexual misconduct allegations against Plaintiff by Jane Doe refer to events that occurred in approximately August 2017, at an off campus location, when Plaintiff engaged in alleged behaviors towards Jane Doe that allegedly constituted sexual harassment and/or sexual assault, and an additional allegation that on or around December 2, 2017, at Collins Center, where it was alleged that Plaintiff engaged in behaviors towards Jane Doe that may constitute sexual harassment and/or sexual assault.

3. John Doe did not sexually assault Jane Doe in August or December 2017, and any contact that transpired between John Doe and Jane Doe in August 2017 was consensual. On December 2017, Jane Doe invited John Doe into her room where they consensually kissed and when Jane Doe indicated she did not wish to engage in intercourse. John Doe acknowledged, agreed and voluntarily left the room.

4. On or about October 31, 2018, John Doe was first notified by Defendant of a complaint made against him by Jane Doe of sexual misconduct, more than a year after the date of the alleged first incident.

5. Thereafter, John Doe was assigned a student advocate by Defendant, a professor employed by Defendant, who advised him that, although he has the right to retain an attorney, that it was not necessary because the allegation was not a criminal proceeding. The student advocate then told John Doe that the case appeared "cut and dry" in his

favor. Based on said assertions by the appointed student advocate, Plaintiff did not advise his parents or seek legal counsel.

6. On February 1, 2019, the Sexual Misconduct Board Hearing was held. Witnesses spoke about the August 2017 event, and no witness mentioned or provided evidence that John Doe touched her buttocks, though the Defendant found John Doe responsible for that allegation. Furthermore, regarding the contact, during the investigation, which evidence was provided/available at the hearing, Jane Doe stated, "I didn't think anything of it really because I thought he was really cute, and I wanted him to like me." A witness of the alleged contact said that "everyone laughed" and did not think anything of it.

7. Jane Doe stated she was heavily incapacitated during the alleged December 2017 event. However, a witness who walked her home that evening stated she did not seem intoxicated. The Defendant concluded that Jane Doe was not truthful in her statements about being intoxicated.

8. On or about December 3, 2017, the day after the alleged second incident, Jane Doe went to the hospital regarding head trauma she allegedly suffered as a result of the complaint. However, the investigation file contains no notes or medical records of said events other than submitting a medical bill that she went to the hospital. The investigators did not seek additional information about the hospital report or whether a rape kit was completed. If, in fact, she had indicated she was sexually assaulted on the prior night, as she alleged in this case, it would have been noted in any medical records, and the legal authorities would have been notified, which, to the best of Plaintiff's understanding, as he was not contacted by any legal authorities at or near that time (or ever involving the alleged events), it and they were not. The investigation apparently

did not seek out said medical records, or notify Plaintiff that Jane Doe sought said emergency medical treatment until the hearing.

9. The investigation file contains bills from Jane Doe's therapy sessions after the incident. However, the investigators did not seek additional information about the therapy visit notes after the alleged incident and whether Jane Doe had attended therapy before December 2017.

10. The investigator(s) did not address and/or seek any information regarding Jane Doe's past, including social media, immediately prior to the alleged events, which would have disclosed a course and pattern of questionable allegations and conduct consistent with Plaintiff's defenses.

11. On February 15, 2019, John Doe was found responsible with violations of Sections H18 Harassment and H20d Sexual Assault as defined in the IU Sexual Misconduct Policy, UA-03, with a recommendation of being expelled from IU.

12. Thereafter, Plaintiff appealed said decision of the Sexual Misconduct Board, and on March 1, 2019, John Doe was told he lost his appeal and was expelled from IU, a mere two (2) months short of acquiring his Diploma.

13. A non-exhaustive list of the claims against Defendant for the aforementioned conduct was set forth in John Doe's First Notice of Tort Claim, which was timely filed and the mandatory ninety (90) day period to deny has not yet expired, which stated:

***Circumstances Regarding Loss:*** **On or about March 1, 2019, Claimant was notified by that the Claimant's appeal of the disciplinary decision of the Sexual Misconduct Panel was denied, thereby exhausting Indiana University's Administrative Remedies and formally imposing final sanctions/punishment on Claimant. Said decision was based on disputed/contested improper sexual misconduct that was alleged to have occurred on two separate occasions, in August**

*2017 and December 2017. Specifically, portions of the initial allegations (obscene language omitted) were set forth by IU as follows:*

*"it is alleged that in approximately August 2017, at an off campus location, you engaged in behaviors towards IU student Jane Doe that may constitute sexual harassment and/or sexual assault…It is alleged that on or around December 2, 2017, at Collins Center, you engaged in behaviors towards Jane Doe that may constitute sexual harassment and/or sexual assault."*

*On or about October 31, 2018, after the alleged incidents(s) were reported/discussed with IU Police Department, and no action was pursued or taken, Sarah Walton Kinney haphazardly conducted an investigation into the allegations. After the initial interview with Jane Doe, and prior to any discussions with Claimant or further investigation, they notified Claimant of the allegations, and enacted a No Contact Order, despite the fact that Claimant and Jane Doe had been at Indiana University as fellow students for nearly one year since the last alleged incident without incident or complaint.*

*Thereafter, Indiana University, by and through its employees and/or agents, conducted a biased, including gender biased, incomplete, uninformed and negligent investigation, performed by unqualified individuals with inadequate training, prior to imposing sanctions/punishment on the Claimant which were unwarranted and outrageous. Said sanctions/punishment were then "rubber stamped" by a hastily comprised Sexual Misconduct Panel, of which the Claimant was provided no information concerning their qualifications and/or training and/or experience in similar matters.*

*The misconduct on the part of some or all of the person(s) this Notice is hereby provided to, includes, but is not limited to, all issues raised during the course of the investigation, hearing and appeal, failure or Advisor to properly advise Claimant of his rights, and to falsely lead him to believe he had no real concern for the outcome (the case is "cut and dry" in his favor), or possible criminal sanctions, failure to obtain criminal records regarding Jane Doe, or discuss or investigate said criminal charges, for Jane Doe for the OWI she was charged with immediately prior to her filing charges herein, failure to conduct a thorough and impartial Investigation, gender bias against Claimant, failure to compel critical witnesses to testify at the disciplinary hearing, failure to obtain emergency medical records which it is believed would substantiate that immediately after the December 2017 alleged incident Jane Doe did not indicate any sexual assault occurred and she was not treated for any sexual assault/trauma, including performing any rape testing, and*

5

> *the like, failure to obtain treatment records for Jane Doe alleged mental conditions and the causes thereof, failure to obtain Indiana University Police investigation documents, or advise Claimant that any such investigation occurred, failure to notify Claimant of possible criminal implications of giving any and all statements, failing to notify Claimant that any information was or could be shared with Police Authorities, failing to provide Claimant with a viable opportunity to cross examine the witnesses against him, failure to provide Claimant an opportunity to meaningfully defend himself, failure to properly and thoroughly comply with Indiana University's Policies and Procedures, misrepresentations whether University Police had or would be notified, failure to abide by the requisite preponderance of the evidence standard, breach of contract, negligent hiring and retention, negligence, intentional and negligent infliction of emotional distress, the sanction/punishment was unwarranted and disproportionate in light of the circumstances, Violation of Title IX of the Education Amendments of 1972, Violation of Covenant of Good Faith and Fair Dealings, promissory estoppel, and/or Violation of Due Process Rights under 42 U.S.C. Section 1983. Claimant will seek redress for each of the foregoing in State/Federal Court, which may include injunctive and declaratory relief, and will file for all claims not mandatory under the Tort Claims Notice Act prior to the mandatory waiting period set forth in said statute and hereinafter.*

14. When Defendant subjected John Doe to disciplinary action, they did so in an arbitrary and capricious way, and in discrimination against him on the basis of his sex. Defendant failed and/or refused to adhere to its own policies and procedures and the policies and procedures themselves are inherently discriminatory and insufficient to protect the rights of male students. The decisions reached were discriminatory given the evidence (or lack thereof), a discriminatory bias against males and the underlying motive to protect Defendant's reputation and financial well-being for a conclusion of sexual misconduct to be reached.

15. John Doe has been greatly damaged by the actions of Defendant, his education and career prospects compromised only two months before his graduation with his college education at IU squandered. Additionally, as a result of Defendant's actions and

inactions, John Doe has suffered physical, psychological, emotional and reputational damages, economic injuries/damages and loss of educational and career opportunities.

16. John Doe therefore brings his action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, breach of contract, negligence and other state law causes of action.

### A. PARTIES, JURISDICTION and VENUE

17. At all times relevant to this Complaint, John Doe was a natural person, citizen of the United States and resident of the State of Indiana. During the events described herein, John Doe was a student at Defendant Indiana University and resided near the University's campus in Bloomington, Indiana.

18. Defendant, Indiana University is an Indiana political subdivision and educational instrumentality of the State of Indiana, with its principal place of business located in Bloomington, Indiana.

19. Upon information and belief, Defendants are acting under regulations set forth in the Indiana Code, and policies, procedures and practices of IU, and are responsible for administering and/or operating Defendant's policies.

20. This action arises under Title IX of the Educational Amendments of 1972, 20 U.S.C. Sec. 1681, *et. seq.*, the Constitution of the United States of America, and Indiana Common Law (which will be added to this Complaint when proper Tort Claim Notice period has expired).

21. This court has Jurisdiction over this action by virtue of federal question jurisdiction pursuant to 28 U.S.C. §1331.

22. This court has personal jurisdiction over Defendant because Defendant resides in Indiana and/or conducts business within the State of Indiana.

23. Venue rests with this Court pursuant to 28 U.S.C. § 1391 and Southern District Civil Rule 82.1, because a substantial part of the events or omissions giving rise to the claims occurred in its judicial district.

## COUNT I:

### Violation of Title IX of the Education Amendments of 1972

Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-23 and further alleges as follows:

24. Pursuant to 20 U.S. Code § 1681, et. seq, Title IX is a federal statute designed to prevent, *inter alia,* sexual discrimination in educational institutions receiving federal funding.

25. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-1688, applies to all public or private educational institutions that receive federal funds, including colleges and universities. The statue prohibits discrimination based on sex in a school's "educational program or activity." Title IX provides, in pertinent part "[n]o person in the United States shall, on the basis of sex, be excluded from participation in or be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The United States Supreme Court has held that Title IX authorizes private suits for damages in certain circumstances.

26. Defendant receives Federal financial assistance and is thus subject to Title IX.

27. Title IX includes an implied private right of action, without any requirement that administrative remedies, if any, be exhausted. An aggrieved plaintiff may seek money damages and other relief.

28. Both the Department of Education and Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures

providing for the prompt and equitable resolution of student…complains alleging any action which would be prohibited by" Title IX or its regulations. 34 C.F.R § 106.8(b) (Department of Education); 28 C.F.R § 54.135(b) (Department of Justice).

29. Title IX mandates Defendant afford equitable procedures and due process to John Doe which includes, but is not limited to, (a) providing adequate, reliable and impartial investigation of complaints, including the opportunity to present witnesses and other evidence, and/or (b) that Defendant's employees involved in the conduct of the procedures have adequate training.

30. Upon information and belief, in fact, specifically testified to at the Sexual Misconduct Board hearing by the investigators, Defendant knew, or in the exercise of due care should have known, employees did not have proper and/or adequate training regarding Title IX sexual misconduct claims, which caused them to violate John Doe's Title IX rights.

31. Defendant's policies and the implementation thereof fail to meet the standards required by Title IX regarding how institutions of higher learning conduct disciplinary proceedings.

32. As detailed throughout this Complaint, Defendant created an environment in which male students accused of sexual misconduct, such as John Doe, are fundamentally denied due process as to be virtually assured of a finding of guilt. Such a biased and one-sided process deprives male Indiana University students of educational opportunities based on their gender/sex.

33. Defendant had actual or constructive knowledge that its investigation and/or discipline of John Doe posed a persuasive and unreasonable risk of gender discrimination with regard to John Doe.

34. Defendant's actions and inactions detailed in this Complaint set in motion a series of events that Defendant knew, or reasonably should have known, would cause male Indiana University students, such as John Doe, to suffer unlawful gender discrimination.

35. Defendant's investigation and/or discipline of John Doe is discriminatory and based upon and/or motivated by John Doe's male gender.

36. The male gender discrimination by Defendant against John Doe, in addition to that previously set forth in this Complaint, includes, but is not limited to, preferential treatment given to Jane Doe in the method and manner witness statements were provided and the investigation is conducted, including the fact that Defendant failed and/or refused to provide John Doe the same protection in his complaints against Jane Doe and those that were afforded to her.

37. As set forth above, the outcome was predetermined and simply a motion into a biased, prejudicial and implicitly unfair process against John Doe.

38. Based upon the foregoing, Defendant imposed an unwarranted and excessive sanction on John Doe as a result of an erroneous outcome reached by a flawed investigation.

39. Based on the foregoing, John Doe was subjected to a biased, prejudiced and explicitly unfair process in violation of Title IX.

40. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, expenses and costs.

## COUNT II

### Violation of the Procedural and Substantive Component of the Due Process Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-40 and further alleges as follows:

41. Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law."

42. Higher education disciplinary proceedings are required to provide students with their due process rights.

43. Plaintiff had the right as a university student to Fourteenth Amendment due process protections in higher education disciplinary proceedings.

44. Defendant, through its employees, subjected Plaintiff to violations of his due process rights by allowing bias against males to motivate their decision to deny Plaintiff "fundamentally fair [disciplinary] procedures" required by United States Supreme Court decisions such as Goss v. Lopez, 419 U.S. 565 (1975).

45. Defendant violated Plaintiff's due process rights by:

a. Irreparably damaging his right to pursue an education and future educational and employment opportunities and occupational liberty

b. Denying him a "meaningful" opportunity to clear his name. *See e.g., Matthews v. Eldridge*, 492 U.S. 319, 333 (1976) (requiring disciplinary procedures that take place "at a meaningful time and in a meaningful manner.").

c. Engaging in a gender-biased practice of violating the rights of male students who were accused of sexual assault against female students.

d. Failing to adequately train and supervise employees with regard to protecting students from violations of their due process rights.

46. Plaintiff has suffered emotional distress, and his reputation and future educational and employment opportunities have been irreparably harmed as a direct and proximate result of Defendant's denial of his due process rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff, by Counsel, demands judgment against the Defendant in an amount to be determined at trial, for reasonable attorney's fees, prejudgment interest, expungement of any and all notations of expelled/suspended, and the like, from Plaintiff's educational transcripts and records/files, for the costs of this action, and for all other relief the court deems just and proper in the premises.

### COUNT III

### Breach of Contract

Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-46 and further alleges as follows:

47.  Doe applied to and enrolled at Indiana University and, with the assistance of his parents, paid tuition and other fees and expenses.  Doe did so in reliance on the understanding, and with the reasonable expectations, *inter alia*, that Defendant would implement and enforce its policies and Defendant would comply with the requirements of applicable law.

48.  Defendant's policies create an express contract or, alternatively, a contract implied in law or in fact, between Defendant and Doe.  Defendant violated these contracts by engaging in the conduct detailed in this Complaint.

49.  Defendant improperly and unlawfully applied its policies in part by not affording Doe rights to which he is entitled.

50.  Defendant also violated its policies in part by applying an incorrect definition of consent.

51.  Defendant's unlawful conduct, detailed in this Complaint, evidences its repeated and material breaches of its policies as well as a breach of implied covenant of good faith and fair dealing inherent to Defendant's policies.

52. During all times relevant to this complaint, Doe did all, or substantially all of the significant things that Defendant's policies required him to do.

53. Defendant's aforementioned breaches of its policies were wrongful and without lawful justification or excuse.

54. As a direct and foreseeable result of these breaches of contract, Ross has sustained, and will continue to sustain, injury damage and loss, including, but not limited to: mental anguish, emotional distress, loss of educational opportunities and loss of career prospects.

## COUNT IV

### Negligence

Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-54 and further alleges as follows:

55. Defendant owed duties of care to Doe, arising from the obligations delineated in Defendant's Policies and Procedures, and directives issued by the U.S. Department of Education's Office of Civil Rights. Such duties included, without limitation, a duty of reasonable care to allow Doe an equal opportunity to present information and witnesses in support of his defense, a duty of care to conduct an impartial and thorough investigation of the allegations of sexual misconduct against and for Doe, a duty to properly and adequately train its investigative staff, and a duty of care to utilize the preponderance of the evidence standard in reaching a determination.

56. As set forth in this Complaint, Defendant breached their duties owed to Doe.

57. As a direct and proximate result of the conduct set forth in this Complaint, Doe sustained damages, including, without limitations, emotional distress, economic injuries and other direct and consequential damages.

WHEREFORE, Plaintiff, by Counsel, demands judgment against the Defendant in an amount to be determined at trial, for reasonable attorney's fees, prejudgment interest, expungement of any and all notations of expelled/suspended, and the like, from Plaintiff's educational transcripts and records/files, for the costs of this action, and for all other relief the court deems just and proper in the premises.

Respectfully submitted,

HOCKER & ASSOCIATES, LLC

/s/ Brett E. Osborne
Brett E. Osborne
Attorney No: 17492-45
6626 E. 75TH Street, Suite 410
Indianapolis, Indiana 46250
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's ECF.

Hamish.Cohen@mbcblaw.com

/s/ Brett E. Osborne
Brett E. Osborne
#17492-45