UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:19-cv-02204-JMS-DML |
| | ) |
| INDIANA UNIVERSITY BOARD OF TRUSTEES, | ) |
| | ) |
| *Defendant*. | ) |

# ORDER

Plaintiff John Doe[1] was a senior at Indiana University when he was expelled from the University for alleged sexual misconduct against a female student. He initiated this litigation against Defendant Indiana University Board of Trustees ("IU"), alleging violation of Title IX of the Education Amendments of 1972 by denying him due process in the investigation into the alleged sexual misconduct due to his gender, violation of his procedural and substantive due process rights under the Fourteenth Amendment, breach of contract, and negligence. [Filing No. 27.] IU has moved for summary judgment on all of John Doe's claims, [Filing No. 45], and that motion is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether

---

[1] Plaintiff filed an Unopposed Motion for Leave to Proceed Under Pseudonym, in which he requested that he be permitted to proceed in the litigation as "John Doe" "due to the extremely sensitive and personal nature of this matter," and "to avoid shame, embarrassment and further psychological damage…." [Filing No. 16.] The Court granted his motion. [Filing No. 24.]

1

a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P.

56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).[2]

### A. IU's Sexual Misconduct Policy

IU's Sexual Misconduct Policy (the "Policy") outlines the procedures IU is to follow for responding to incidents involving allegations of student sexual misconduct. It states:

---

[2] The Court notes that its Practices and Procedures clearly set forth in Appendix A how to cite to exhibits in a brief. [Filing No. 7.] IU has not followed the Court's clear instruction, instead referring to exhibits by name and citing to the actual page number, instead of the ECF page number. For example, IU cites to material on pages 2 to 3 of the Final Investigation Report as "Inv. Rpt. Ex. 1.1 at 2-3." [Filing No. 46 at 3.] Instead, the citation should be "Filing No. 47-1 at 11-12," which corresponds to the ECF number of the document, and the ECF page numbers where the cited material appears. Additionally, IU filed its brief before its exhibits – which is also in contravention of the Court's Practices and Procedures. [*See* Filing No. 7 at 15 (Practices and Procedures stating "It is critically important that exhibits be filed before supporting briefs so that citations in supporting briefs are to the docket numbers of the previously-filed exhibits. This significantly facilitates the Court's review of the motion and briefs as well as the parties' review of the filed materials"). IU's failure to provide the proper form of citation the Court specifically set forth in its Practices and Procedures made the Court's review of the pending motion unnecessarily cumbersome. Counsel is cautioned to comply with the Court's Practices and Procedures going forward in this and other cases.

> [IU] prohibits discrimination on the basis of sex or gender in its educational programs and activities. Discrimination on the basis of sex or gender is also prohibited by federal laws, including Title VII and Title IX. This policy governs the University's response to discrimination based on sex or gender, and all forms of sexual misconduct (which includes sexual harassment, sexual assault, other forms of sexual violence, dating violence, domestic violence, sexual exploitation and stalking…. Such behaviors are against the law and are unacceptable behaviors under [IU] policy…. These unacceptable behaviors are hereafter referred to as "Sexual Misconduct." The University does not tolerate sexual misconduct and it will take action to prevent and address such misconduct. The University has jurisdiction over all Title IX and related complaints….

https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/

archived-01012018-07012019.html (last visited August 31, 2020).³

The Policy details the process for receiving and investigating complaints of sexual misconduct as follows:

> Individuals who have experienced sexual misconduct are strongly urged to promptly report such incidents. [IU] will respond promptly to all reports of sexual misconduct. According to the procedures below, the University will provide a fair and impartial investigation and resolution for complaints and, where appropriate, issue sanctions and remedial measures. The severity of the corrective action, up to and including termination or expulsion of the offender, will depend on the circumstances of the particular case. Any person who is a responsible employee at the University, such as administrators, supervisors, managers or faculty members, and who has received information or has knowledge of sexual misconduct, must make a report to designated University officials or be subject to disciplinary action….

*     *     *

---

³ In her Affidavit, Elizabeth Spotts, the Associate Dean of Students and Director of Student Conduct and Deputy Title IX Coordinator for IU's Bloomington campus, states that the Policy is located at https://policies.iu.edu/policies/ua-03-sexual-misconduct/index.html. [Filing No. 47-3 at 3.] This web address links to an "interim policy for the 2020-21 academic year," which took effect after Ms. Spotts filed her Affidavit. Instead, the Court considers the Policy that was in effect from January 1, 2018 to July 1, 2019, which encompasses the time period relevant to this lawsuit and is located at https://police.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/archived-01012018-07012019.html (last visited August 31, 2020). In any event, the language of the Policy is not particularly relevant to the pending Motion for Summary Judgment, which ultimately turns on procedural and Eleventh Amendment sovereign immunity grounds, but instead is provided as background.

**Investigation**

1. Upon receipt of a report of sexual misconduct, the University will respond promptly to investigate and provide interim measures where appropriate. Procedures after a report of sexual misconduct will follow the steps listed below depending on whether the respondent is a student or employee…. Investigation of the alleged misconduct shall be conducted by the University Title IX Coordinator, a student affairs official (if alleged student misconduct), or another appropriate designee.  Information for the investigation may be provided by the parties, witnesses identified by any party, or the University.  Information related to prior sexual history of the parties will be prohibited, except in very limited circumstances regarding prior sexual history between the parties where such information may be relevant to the issue of consent.  However, consent will not be assumed based solely on evidence of any prior sexual history.

\*         \*         \*

3. All investigators shall have the appropriate required and ongoing training on conducting sexual misconduct investigations, issues related to sexual misconduct, and applicable University policies and procedures.

\*         \*         \*

**Interim and Remedial Measures**

1. Upon receiving a report or notice of alleged sexual misconduct, the University will provide appropriate and necessary interim measures to the complainant. These protective and supportive measures may vary depending on the individual's campus, the individual's needs and the specific circumstances, and could include no contact orders; assistance in changing academic, living, transportation, and/or work situations; counseling services; victim advocacy services; and assistance in obtaining protective orders.  Interim measures may also include suspension of the respondent pending completion of the investigation, depending on the nature of the allegations.

https://policies.iu.edu/policies/ua-03-discrimination-harrassment-and-sexual-misconduct/

archived-01012018-07012019.html (last visited August 31, 2020).

The rights of the parties are outlined in the Policy as follows:

**Summary of Rights of the Complainant and Respondent in Sexual Misconduct Procedures**

The rights of the parties to a sexual misconduct proceeding include:

5

- To be fully informed of University policies and procedures as well as the nature and extent of all alleged violations contained within the allegation.

- To be treated with respect by University officials.

- To have an advisor present during a university sexual misconduct proceeding, investigation meeting, or related meeting. The role of the advisor will be limited to being present only; they will not be allowed to speak during any University sexual misconduct proceeding, investigation meeting, or related meeting.

- Adequate, reliable, and impartial investigation and appropriate resolution of all reports of sexual misconduct.

- To be informed by the University of options to notify proper law enforcement authorities including on-campus and local police, and the option to be assisted by campus authorities in notifying proper law enforcement, if the individual chooses.

- To be notified of available counseling, mental health, academic, legal and other support services, both at the University and in the community.

- To have allegations investigated by individuals who are properly trained to investigate and resolve allegations of sexual misconduct.

- Equitable participation in the investigation and disciplinary process, including the opportunity to identify witnesses and other appropriate evidence.

- To the use of the preponderance of the evidence standard (more likely than not) in determining responsibility.

- The right to appeal as set forth in these procedures.

https://policies.iu.edu/policies/ua-03-discrimination-harassment-and-sexual-misconduct/archived-01012018-07012019.html (last visited August 31, 2020).

Associate Dean of Students Elizabeth Spotts provides an overview of the procedure IU follows when it receives a complaint of sexual misconduct, as outlined in the Policy:

- "When [IU's] Bloomington campus receives a sexual misconduct[,] sexual harassment or assault report, I am made aware of the report immediately and will assign it to a team of trained sexual misconduct investigators, who will initiate an investigation consistent with [IU's] sexual misconduct procedures, which includes providing notice of the allegations and investigation to both

> Complainant and Respondent.  If the investigation reveals sufficient evidence that the alleged behavior may be a violation of [IU']s Code of Student Rights, Responsibilities, and Conduct (the "Code"), charges will be applied to the case. The investigators will draft a charge letter, which I review before it is issued. When charges are issued, a hearing is scheduled, and both Complainant and Respondent are notified."

- "Where the investigators determine sufficient evidence exists to issue a charge letter and a matter goes before a trained sexual misconduct hearing panel, I often serve as the hearing coordinator.  In that role, I provide the hearing file to the panel; help coordinate witnesses; and answer procedural questions.  I do not participate in the deliberation."

- "The sexual misconduct investigators at [IU] Bloomington are experienced and professional.  They receive comprehensive annual Title IX training that provides – among other things – that they are not to evidence or apply any gender bias or gender-based preferential treatment consistent with Title IX and [IU's] policies and procedures."

- "[IU] provides the same process and resources to each sexual misconduct Complainant and Respondent regardless of the gender of either:  a.  Both have access to counseling, assistance with classes[,] assistance dealing with any housing issues, and assistance dealing with any university-issued no-contact order between them.  b.  Both are provided access to an independent [IU] advisor to assist them through the sexual misconduct process, including the investigation and, as applicable, the hearing and appeal.  Both have the same rights to submit evidence or to identify witnesses throughout the investigation process.  c.  Both are interviewed in the same interview rooms by the same personnel using the same approach (though not at the same time).  d.  Both have the same rights to have an advisor throughout the sexual misconduct process, including at the hearing, though the advisor's active participation is limited for both.  e.  Both have the same rights to provide information during the investigation, to identify witnesses, to review both the preliminary and final reports, and to make opening and closing statements, present evidence, and ask questions at the hearing.  Further, the Respondent is given the final opportunity to speak at the hearing.  And, f.  Both have the same rights to appeal any decision by the hearing panel pursuant to the same rules and standards…."

- "In determining what sanction is appropriate, a sexual misconduct hearing panel will consider any aggravating and mitigating factors, including but not limited to, elements of force, frequency of behavior, severity of behavior, impact of the behavior, and the likelihood the behavior will continue."

[Filing No. 47-3 at 3-8.]

### B.   The Sexual Misconduct Allegations[4]

John Doe and Jane Doe[5] were both students at IU's Bloomington campus during the 2017-2018 school year, and met at an off-campus party in August 2017.  [Filing No. 47-1 at 10.]  At their initial meeting, Jane Doe alleges that John Doe inappropriately touched her breasts and buttocks multiple times, but that she did not report his conduct.  [Filing No. 47-1 at 11.]  After their initial meeting, John Doe and Jane Doe saw each other at parties, but did not talk or interact until December 2017.  [Filing No. 47-1 at 11.]

On December 2, 2017 around 3:00 a.m., Jane Doe was in her dorm room and received a text from John Doe.  [Filing No. 47-1 at 11.]  Jane Doe had attended her sorority's formal event that evening, and was very intoxicated.  [Filing No. 47-1 at 11.]  John Doe texted Jane Doe that he was also intoxicated and needed a place to stay.  [Filing No. 47-1 at 11.]  Jane Doe told John Doe that her roommate was not there, and that he could sleep in her roommate's bed.  [Filing No. 47-1 at 11.]  When John Doe arrived, Jane Doe told him which bed was her roommate's and got into her own bed to go to sleep.  [Filing No. 47-1 at 11.]  Instead of getting into the roommate's bed, John Doe got into Jane Doe's bed with her and began touching her and taking her clothes off.  [Filing No. 47-1 at 11.]  Jane Doe alleges that, among other things, John Doe forced her to engage

---

[4] The Court relies primarily upon IU's Final Investigation Report and its Title IX Report in summarizing the sexual misconduct allegations.  [Filing No. 47-1 at 10-25.]  It sets forth those allegations to provide background, but makes no findings as to their truth or falsity because this litigation is focused on the procedures IU undertook in investigating the allegations and in disciplining John Doe – not on whether the allegations are true.  Additionally, IU sets forth the allegations in great detail in its brief in support of its Motion for Summary Judgment, but the Court finds many of those details irrelevant to the pending motion so does not repeat them here.

[5] "Jane Doe" is a pseudonym used to protect the identity of the female student who accused John Doe of sexual misconduct.

in oral sex and intercourse. [Filing No. 47-1 at 11.] John Doe eventually realized that Jane Doe wanted him to stop, and got dressed and left Jane Doe's dorm room. [Filing No. 47-1 at 11.]

After John Doe left, Jane Doe texted her friend and told her what happened. [Filing No. 47-1 at 12.] She also called a member of John Doe's fraternity to tell him what had happened. [Filing No. 47-1 at 17.] Jane Doe then blocked John Doe on social media, tried to forget what had happened, and began seeing a mental health counselor. [Filing No. 47-1 at 12.] She ran into John Doe at a party in April 2018 and confronted him, and he said that he did not remember the incident and was very sorry and did not mean to hurt her. [Filing No. 47-1 at 12.]

### C. IU's Investigation of Jane Doe's Allegations

On January 20, 2018, Jane Doe emailed her Resident Advisor ("RA"), asking if she could meet with the RA "sometime soon to talk about something." [Filing No. 47-1 at 58.] The RA responded with his availability, and asked for some background. [Filing No. 47-1 at 59.] Jane Doe responded, "I really need to talk about my living arrangements and getting them changed if possible. A little over a month ago I was sexually assaulted in this room, and I just can't sleep in here anymore. I just need some help." [Filing No. 47-1 at 59.] The RA advised Jane Doe that he would need to file a Title IX report with IU, and the two set up a time to meet. [Filing No. 47-1 at 59.] The RA then notified IU's Office of Student Conduct ("the OSC") of Jane Doe's allegations, and the OSC contacted Jane Doe on January 22, 2018. [Filing No. 47-1 at 10.]

IU assigned two investigators to Jane Doe's case – Sarah Walton Kinney and Simone Cardosa. [Filing No. 47-1 at 3; Filing No. 47-2 at 3.] Both Ms. Walton Kinney and Ms. Cardosa are employed by IU in the Division of Student Affairs (which is part of the OSC) as Sexual Misconduct Investigators. [Filing No. 47-1 at 2; Filing No. 47-2 at 2.] Jane Doe met with Ms. Walton Kinney and Ms. Cardosa on October 29, 2018, and received information regarding the

9

investigative process, indicated that she wanted to move forward with an OSC investigation, and provided a written statement. [Filing No. 47-1 at 10.]

John Doe was notified of Jane Doe's allegations on October 31, 2018, and was instructed to attend a meeting regarding the investigation on November 2, 2018. [Filing No. 47-1 at 10.] John Doe met with Ms. Walton Kinney and Ms. Cardosa on November 2, 2018, and was provided with and signed a Respondent Information Form, which "addresse[d] topics such as process, privacy, confidentiality, interim measures, resources, amnesty, and retaliation." [Filing No. 47-1 at 10.] John Doe was offered the opportunity to ask questions about the investigative process, was provided a copy of IU's Procedures for Responding to Incidents Involving Allegations of Student Sexual Misconduct, and was given the opportunity to provide a written statement. [Filing No. 47-1 at 10.]

John Doe submitted a written statement on November 5, 2018, and on November 7, 2018 and January 10, 2019 he and his advisor, George Hegeman, met with Ms. Walton Kinney and Ms. Cardosa to answer follow-up questions. [Filing No. 47-1 at 10-11.]

On January 11, 2019, the OSC sent John Doe a Charge Letter notifying him that he was being charged with several violations of IU's Code of Student Rights, Responsibilities, and Conduct (the "Code") including: (1) violating the Code and the Policy during an off-campus activity; (2) harassment, including sexual harassment; and (3) sexual assault. [Filing No. 47-1 at 81.] The OSC advised John Doe in the January 11, 2019 letter that a hearing was scheduled for January 18, 2019, at which John Doe would have the opportunity to provide a statement and ask questions, and "[a] decision about responsibility may be determined, and if appropriate, a sanction(s) may be imposed." [Filing No. 47-1 at 81.] The OSC also advised John Doe in the

letter that he could forego a hearing and accept responsibility for the charges, at which point a student affairs conduct officer would make a sanctions decision. [Filing No. 47-1 at 82.]

In January 2019, John Doe and Jane Doe engaged in alternative dispute resolution. [Filing No. 47-1 at 7-8.] No resolution was reached because John Doe was unwilling to accept any resolution that would have resulted in his separation or removal from campus. [Filing No. 47-1 at 8.]

### D.  John Doe's Hearing and Resulting Discipline

John Doe's hearing took place on February 1, 2019. [Filing No. 47-6 at 8.] The hearing panel was not privy to or part of the investigation, nor was it privy to the alternative dispute resolution-related correspondence or communications. [Filing No. 47-1 at 8; Filing No. 47-2 at 5.] The hearing panel was comprised of: (1) Anna Krause, who at the time of the hearing was an Assistant Director in IU's Office of Student Conduct; (2) Michael Ryan, who at the time of the hearing was an Assistant Director of Undergraduate Admissions at what was previously called the IU School of Public and Environmental Affairs; and (3) Jackie Stelmaszczyk, who at the time of the hearing was an Assistant Director with IU's Division of Student Affairs. [Filing No. 47-6 at 2-3; Filing No. 47-7 at 2-3; Filing No. 47-8 at 2-4.]

All three hearing officers implemented the training they underwent and followed all applicable IU policies and procedures during the hearing. [Filing No. 47-6 at 3-5; Filing No. 47-7 at 4; Filing No. 47-8 at 3-4.] Additionally, all applicable policies and procedures were followed in John Doe's hearing – for example, he fully participated in the hearing, including making statements and asking questions. [Filing No. 47-3 at 5-8; Filing No. 47-6 at 4-5; Filing No. 47-7 at 3-4; Filing No. 47-8 at 3-5.] After the hearing, the hearing officers deliberated and discussed the credibility of the witnesses and the parties, whether Jane Doe consented to John Doe's actions,

whether force was involved, and whether either or both parties were incapacitated. [Filing No. 47-7 at 3-4; Filing No. 47-8 at 4-5.] The hearing officers did not discuss gender in arriving at their decision. [Filing No. 47-6 at 4-6; Filing No. 47-7 at 3-5; Filing No. 47-8 at 4-5.] Applying the standards set forth in the Code and the Policy, the hearing panel found that it was more likely than not that John Doe took the actions that Jane Doe alleged, in violation of the Code and the Policy. [Filing No. 47-7 at 4-5; Filing No. 47-8 at 4-5.]

On February 15, 2019, the hearing panel sent John Doe a letter outlining its findings, and stating that John Doe was "dismissed from [IU] permanently," effective immediately. [Filing No. 47-6 at 8-12.] In the letter, the hearing panel also set forth the procedure by which John Doe could appeal its decision. [Filing No. 47-6 at 11-12.]

### E. John Doe's Appeal

John Doe submitted an appeal, in which he argued that there were procedural errors during the hearing and that expulsion was grossly disproportionate to his actions and was a result of gender bias. [Filing No. 47-5 at 3.] The appeal was assigned to Appellate Officer Kathy Riester, who is IU's Associate Vice Provost for Student Affairs and Executive Associate Dean of Students. [Filing No. 47-5 at 2-3.] Dr. Riester reviewed the hearing packet that had been provided to the hearing panel, listened to the audio recording of the hearing, and analyzed the information pursuant to IU's policies and procedures. [Filing No. 47-5 at 3-4.] Specifically, she considered whether there were any procedural errors or evidence of gender bias. [Filing No. 47-5 at 4.] Dr. Riester ultimately concluded that John Doe's appeal was meritless because IU followed its policies and procedures and because the sanction was "by no means grossly disproportionate." [Filing No. 47-5 at 5.] In reaching her decision, Dr. Riester followed IU's policies and procedures, and was not influenced by John Doe's or Jane Doe's gender. [Filing No. 47-5 at 5.] Dr. Riester sent letters to

John Doe and Jane Doe on March 1, 2019, informing them of her decision. [Filing No. 47-5 at 8-12.]

### F. The Lawsuit

John Doe initiated this litigation in June 2019, [Filing No. 1], and filed the operative Amended Complaint on October 24, 2019, [Filing No. 27]. He asserts claims for: (1) violation of Title IX; (2) violation of his procedural and substantive due process rights under the Fourteenth Amendment; (3) breach of contract; and (4) negligence. [Filing No. 27 at 8-13.] John Doe seeks monetary damages and "expungement of any and all notations of expelled/suspended, and the like, from [his] educational transcripts and records/files." [Filing No. 27 at 14.] IU has moved for summary judgment on all of John Doe's claims. [Filing No. 45.]

### III.
### DISCUSSION

### A. Title IX Claim

IU argues that John Doe has not, and cannot, identify any evidence showing that IU discriminated against him on the basis of his gender. [Filing No. 46 at 24-29.] It argues that "[t]he undisputed material facts demonstrate IU adhered to its gender-neutral policies and procedures governing the investigation and consideration of sexual misconduct allegations." [Filing No. 46 at 24-25.] IU points to its express policies, which it contends are gender-neutral, and to evidence which it contends shows that it adhered to those policies. [Filing No. 46 at 28-29.] IU asserts that John Doe "had every opportunity to present evidence, identify witnesses, make statements, and question witnesses," and that "a gender-neutral process does not evidence gender discrimination just because a party disagrees with the outcome." [Filing No. 46 at 28.] IU also argues that John Doe relies on procedures that are not required by the law or the Policy in attacking the procedure that IU followed. [Filing No. 46 at 28-29.] It contends that John Doe's claim that the process was

13

biased because it was led by female employees is "offensive and wildly inappropriate," and not enough to show discrimination.  [Filing No. 46 at 29.]

In response, John Doe states that he was provided with a copy of the Final Investigation Report on June 8, 2020, and that he agreed prior to IU filing its Motion for Summary Judgment to dismiss his Title IX claim.  [Filing No. 48 at 3 ("After receiving and reviewing the [Final Investigation Report] and hearing panel audio, and based upon said review, in conjunction with other documents provided through discovery and discussions with the client, prior to [IU] filing [its] Motion for Summary Judgment, Plaintiff agreed to [d]ismiss the Title IX claim").]  John Doe further states that "to be consistent with what [he] indicated prior to this filing, he agrees to the granting of [IU's] Motion for Summary Judgment regarding the Title IX action."  [Filing No. 48 at 3.]

In its reply, IU notes John Doe's lack of a substantive response to its Title IX arguments.  [Filing No. 50 at 2.]

Based on John Doe's concession that his Title IX claim should be dismissed, the Court **GRANTS** IU's Motion for Summary Judgment on that claim.

### B. Fourteenth Amendment Due Process, Breach of Contract, and Negligence Claims

IU argues that John Doe's remaining claims fail because IU is "constitutionally immune under the Eleventh Amendment."  [Filing No. 46 at 34.]  Specifically, it asserts that it is an instrumentality of the state, and it is entitled to immunity for John Doe's Fourteenth Amendment due process claim because it has not consented to being sued for damages for federal constitutional violations.  [Filing No. 46 at 34-35.]  As for John Doe's breach of contract and negligence claims, IU argues that it is entitled to Eleventh Amendment Immunity as a state agency that objects to those claims.  [Filing No. 46 at 35.]

John Doe does not respond directly to IU's Eleventh Amendment immunity arguments, but rather contends that IU has not objected until now to the Fourteenth Amendment due process, breach of contract, and negligence claims being heard with the Title IX claim in federal court. [Filing No. 48 at 3.]  He argues that "[t]he remedy is simple, dismiss the due process and state law claims, without prejudice, so they can be refiled and heard in state court." [Filing No. 48 at 3.]

In its reply, IU argues that it is entitled to summary judgment on all of John Doe's claims, and that dismissal of the Fourteenth Amendment due process and state law claims is inappropriate because sovereign immunity is not jurisdictional in nature. [Filing No. 50 at 6.]  IU also argues that it will suffer plain legal prejudice if John Doe is permitted to dismiss his Fourteenth Amendment due process and state law claims without prejudice because the parties have been litigating this case for over a year, fact discovery closed months ago, trial is set for January 25, 2021, IU moved for summary judgment, and "dismissal would allow Plaintiff to change course and refile in state court,…after discovery is closed, with the benefit of having read IU's fully-briefed summary judgment arguments related to those claims." [Filing No. 50 at 7-8.]

> 1. *John Doe's Voluntary Dismissal Request*

The premise of John Doe's argument that his Fourteenth Amendment due process and state law claims should be dismissed without prejudice is that Eleventh Amendment immunity is jurisdictional in nature.  But it is not – the Eleventh Amendment does not divest a federal court of subject matter jurisdiction unless the defense of Eleventh Amendment immunity has been waived. *See Cooper v. Ill. Dep't of Human Servs.*, 758 Fed. App'x 553, 554 (7th Cir. 2019) ("the Eleventh Amendment does not curtail subject-matter jurisdiction"); *Turner v. State of Ind. Teachers' Retirement Fund*, 2008 WL 2324114, at *1 (S.D. Ind. 2008).  IU has not waived Eleventh Amendment immunity but rather raised it in its Answer to John Doe's Complaint, [Filing No. 31

15

at 20-21], and as grounds for summary judgment. The Court is not divested of subject matter jurisdiction due to the availability of Eleventh Amendment immunity to IU for John Doe's Fourteenth Amendment due process and state law claims.

Additionally, to the extent that John Doe seeks to voluntarily dismiss his claims under Fed. R. Civ. P. 41(a)(2), the Court finds that this would be inappropriate. Rule 41(a)(2) allows dismissal at the plaintiff's request only by court order "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A district court "enjoys wide discretion" in considering whether dismissal is appropriate under Rule 41. *Jack Gray Transport, Inc. v. AT&T Corp.*, 2017 WL 633848, at *1 (N.D. Ind. 2017) (citing *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994)). The Seventh Circuit has instructed that courts should not allow dismissal without prejudice if the defendant would suffer "plain legal prejudice." *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988). Factors a court should consider in determining whether plain legal prejudice exists include: "(1) the defendant's effort and expense of preparation for trial, (2) whether there has been excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) the sufficiency of the plaintiff's explanation for the need to take a dismissal, and (4) whether the defendant has filed a motion for summary judgment." *Jack Gray Transport, Inc.*, 2017 WL 633848, at *1 (citing *F.D.I.C. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992)); *see also Kunz v. DeFelice*, 538 F.3d 667, 677-78 (7th Cir. 2008). The Court considers each of these factors in turn.

First, John Doe filed this case over one year ago and the parties have completed discovery and are preparing for a January 2021 trial. These efforts would be largely wasted if the Court dismissed the remaining claims and John Doe re-filed them in state court. Second, while John Doe states that he informed IU that he would dismiss the Title IX claim, he did not do so and IU was

forced to file a Motion for Summary Judgment on that claim. John Doe could have streamlined the prosecution of this action by dismissing the Title IX claim immediately upon determining that it was meritless. Third, as discussed above, John Doe's explanation for dismissal – that Eleventh Amendment immunity divests the Court of subject matter jurisdiction – is incorrect. The Court also finds John Doe's actions thus far in this litigation telling. John Doe acknowledges that, as discussed below, Eleventh Amendment immunity bars his Fourteenth Amendment due process and state law claims, arguing only that his claims "should be presented to and decided upon by the appropriate State Court and not decided herein." [Filing No. 48 at 4.] But John Doe has been on notice of IU's reliance on Eleventh Amendment immunity as an affirmative defense since IU filed its Answer over one year ago. [Filing No. 17.] Yet, John Doe never filed – and, indeed, still has not filed – a motion to voluntarily dismiss his Fourteenth Amendment due process and state law claims due to immunity, so that he could assert them in state court. His request for dismissal of those claims without prejudice this late in the game appears to be nothing more than an attempt to avoid a meritorious Motion for Summary Judgment. Finally, the Court agrees with IU that it would be unfair to allow John Doe to proceed in state court with his Fourteenth Amendment due process and state law claims after receiving a preview of the arguments IU has set forth in its Motion for Summary Judgment. In sum, IU would suffer "plain legal prejudice" if the Court allowed John Doe to voluntarily dismiss his Fourteenth Amendment due process and state law claims without prejudice so that he could re-file them in state court. *Jack Gray Transport, Inc.*, 2017 WL 633848, at *1.

### 2. Whether Eleventh Amendment Immunity Precludes John Doe's Remaining Claims

Eleventh Amendment immunity bars suits against states and their agencies unless a state has waived immunity by consenting to suit in federal court, Congress has abrogated the state's

immunity "through a valid exercise of its powers under recognized constitutional authority," or the plaintiff seeks "prospective equitable relief for ongoing violations of federal law." *Ind. Protection & Advocacy Servs. v. Ind. Family & Social Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010).

IU is a state entity. *See* Ind. Code § 21-20-2-1 ("Indiana University is recognized as the university of the state"); *Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018) ("[IU] and its Board of Trustees are state agencies for sovereign-immunity purposes") (citing *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007)); *Woods v. Ind. Univ. – Purdue Univ. at Indianapolis*, 996 F.2d 880, 883 (7th Cir. 1993) ("Indiana University enjoys the same Eleventh Amendment immunity as the State of Indiana itself…."); *Feresu v. Ind. Univ. Bloomington*, 2015 WL 5177740, at *3 (S.D. Ind. 2015) ("IU is an 'instrumentality,' 'arm,' or 'alter ego' of the State of Indiana for purposes of the Eleventh Amendment").

Additionally, none of the exceptions to Eleventh Amendment sovereign immunity apply here. As discussed above, IU has not waived immunity but instead asserted it as an affirmative defense in its Answer and raised it in its Motion for Summary Judgment. Second, Congress has not abrogated IU's immunity. Finally, the equitable relief that John Doe seeks here – expungement of any notation on his records of expulsion or suspension from IU – is retrospective, not prospective. Accordingly, John Doe's Fourteenth Amendment due process claim is barred by Eleventh Amendment immunity.[6] *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th

---

[6] IU also argues that John Doe's Fourteenth Amendment due process, breach of contract, and negligence claims fail for lack of evidence. The Court need not address that argument because it has dismissed those claims based on Eleventh Amendment immunity. The Court notes, however, that John Doe did not present any evidence in opposition to IU's Motion for Summary Judgment, and that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schact v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). John Doe has wholly failed to sustain his burden in opposing IU's Motion for Summary Judgment, and this failure provides another, independent basis for granting IU's Motion for Summary Judgment.

Cir. 2013) ("[T]he general rule is that private individuals are unable to sue a state in federal court absent the state's consent").  IU's Motion for Summary Judgment as it relates to the Fourteenth Amendment due process  claim is **GRANTED** on the grounds of Eleventh Amendment sovereign immunity.

Having granted summary judgment on John Doe's Title IX and Fourteenth Amendment due process claims, only his state law claims for breach of contract and negligence remain.  The Court, in its discretion, exercises supplemental jurisdiction over the state law claims and **GRANTS** IU's Motion for Summary Judgment on those claims as well, based on Eleventh Amendment sovereign immunity.[7]

## IV.
### CONCLUSION

In sum, the Court:

- **GRANTS** IU's Motion for Summary Judgment, [45], on John Doe's Title IX claims because John Doe concedes that his claim is meritless;

- Finds that it is improper to dismiss without prejudice John Doe's Fourteenth Amendment due process, breach of contract, and negligence claims because IU would suffer plain legal prejudice and because Eleventh Amendment immunity does not divest the Court of subject matter jurisdiction over those claims; and

- Finds that IU is entitled to Eleventh Amendment immunity on John Doe's remaining claims for Fourteenth Amendment due process violations, breach of contract, and negligence, and **GRANTS** IU's Motion for Summary Judgment, [45], on those claims.

---

[7] While a district court often relinquishes jurisdiction over state law claims if all federal claims have been resolved, *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007) (citations and emphasis omitted), the Court should balance "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The Court finds that the exercise of supplemental jurisdiction over John Doe's state law claims is proper in this case.  The case has been pending for over a year, and the parties have engaged in discovery and briefed a Motion for Summary Judgment.  The Court has expended significant judicial resources thus far.  And, most significantly and as discussed above, principles of fairness weigh in favor of the Court exercising jurisdiction over the state law claims.

Final judgment shall enter accordingly.

Date: 8/31/2020

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**